## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABRAHAM ITUAH, <br><br>         *Plaintiff,* <br><br>    v. <br><br><br> CITY OF PHILADELPHIA, *et al.* <br><br>         *Defendants.* | CIVIL ACTION <br> NO. 16-05772 |

**PAPPERT, J.**                                                                 **May 15, 2017**

### MEMORANDUM

This lawsuit concerns actions various Defendants allegedly took to secure the sale of property Plaintiff Abraham Ituah previously owned at 3842 Fairmount Avenue in Philadelphia. Defendants filed motions to dismiss the Complaint pursuant to the *Rooker-Feldman* doctrine, *res judicata* and Rule 12(b)(6). For the reasons below, the Court grants Defendants' motions and dismisses Ituah's claims.[1]

### I.

### A.

The state-court action that resulted in the sale of Ituah's property commenced on April 22, 2015, when the City of Philadelphia filed a real estate tax lien claim against him in the Philadelphia Court of Common Pleas pursuant to the Municipal Claims and

---

[1] To the extent Ituah's claims are barred by *Rooker-Feldman*, the Court dismisses them without prejudice for lack of subject matter jurisdiction. However, the Court dismisses with prejudice those claims that do not implicate *Rooker-Feldman* but are nonetheless barred by *res judicata*.

1

Tax Lien Act ("MCTLA").[2]  (Defs.' Mot. to Dismiss, at 2, ECF No. 6.)  On May 13, 2015, Judge Linda Carpenter issued a rule to show cause why the property should not be sold at a sheriff's sale to satisfy delinquent real estate taxes.  (*Id.*)  The property was posted on July 5, 2015 and the Affadavit of Posting was filed with the court on July 9.  (*Id.*)  The Affadavit of Service of the Posting was filed with the court on August 4, certifying that all interested parties had been served by certified and first class mail on July 20. (*Id.*)  Ituah did not file a response to the court's May 13 rule, and the court entered a decree on August 11, 2015 approving a sheriff's sale of the property.

On September 16, 2015, Dimitrios Dimopoulos purchased the property at the sheriff's sale.  (*Id.*)  Ituah claims he learned of the sale on September 17 from a city accountant.  (Pl.'s Resp., at 4.)  On September 21, Ituah filed a motion to set aside the sale, arguing that he had not received proper notice.  (*Id.*)  He claimed that he had not seen the postings at the property because it had been vacant since November 2013 and he had not received notice at the address where he resided.  *See* Mot. to Set Aside at 1–2, *City of Philadelphia v. Ituah*, No. 1504T0504 (Sep. 21, 2015).

The City filed a response on October 13 claiming that it had complied with the MCTLA's notice requirements under 53 PA. STAT. AND CONS. STAT. ANN. § 7193.2 by posting notice at the property and mailing a copy of the petition and rule to Ituah's registered address.  *See* Answer in Opp'n at 1, 3–4, *City of Philadelphia v. Ituah*, No. 1504T0504 (Oct. 13, 2015).  Though Ituah claimed the City failed to send notice to his

---

[2]  In deciding a motion to dismiss, "[i]n addition to the complaint itself, the court can review documents attached to the complaint and matters of public record, *Lum v. Bank of America*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004), and a court may take judicial notice of a prior judicial opinion." *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009).  The Court reviewed the publically-accessible filings from the state-court proceedings and cites them to the extent they are relevant to the *res judicata* analysis.

current residence, the City explained that he had not registered that address pursuant to § 7193.1.  (*Id.*)  Under the statute, a party who fails to accurately register his interest and address pursuant to [§ 7193.1] lacks standing to complain of improper notice if the city complied with [§ 7193.2(a)].  *See* 53 PA. STAT. AND CONS. STAT. ANN. § 7193.2(b). The City argued that because Ituah failed to do so and the City complied with § 7193.2(a), he could not complain of improper notice.  (*Id.* (citing 53 PA. STAT. AND CONS. STAT. ANN. § 7193.2(b))).  In Ituah's reply, he argued that the sale should be set aside because the Defendants "fraudulently obtained the judgment in [his] absence by failing to properly [notify him] of the action that led to the sale."  *See* Reply at 1, *City of Philadelphia v. Ituah*, No. 1504T0504 (Oct. 22, 2015).  Judge Carpenter denied Ituah's motion to set aside the sale on October 26, holding that Defendants had complied with the statutory notice requirements.

In the meantime, Defendants were processing the transfer of the deed to Dimopoulos and/or his corporate designee, Cool Spaces LLC.  The sheriff's deed was acknowledged on October 21, 2015 and recorded on November 14, 2015.  *See* Answer in Opp'n at 4 (Oct. 13, 2015); Reply to Mot. to Redeem at 4, *City of Philadelphia v. Ituah*, No. 1504T0504 (Feb. 24, 2016); Answer in Opp'n to Mot. for Post-Trial Relief at 3, *City of Philadelphia v. Ituah*, No. 1504T0504 (Apr. 11, 2016).

Ituah filed a motion for reconsideration on November 11, arguing that the City failed to comply with the statutory notice requirements because it had not searched the taxpayer information system to locate the correct address at which to serve him.  *See* Mot. for Reconsideration at 1–2, *City of Philadelphia v. Ituah*, No. 1504T0504 (Nov. 11, 2015).  Judge Carpenter denied the motion on November 18.  On December 2, Ituah

filed a motion to redeem the premises, reasserting his argument that the City had fraudulently obtained the judgment in his absence by "deliberately fail[ing] to locate [his] mailing address" using tax records. *See* Mot. to Redeem at 1–2, *City of Philadelphia v. Ituah*, No. 1504T0504 (Dec. 2, 2015). The City responded on December 22, stating that it "did not deliberately fail to locate [Ituah's] address" but rather "it was [Ituah] who failed to accurately register his address pursuant to 53 PA. STAT. AND CONS. STAT. ANN. § 7193.1." *See* Reply to Mot. to Redeem at 2, 4 (Feb. 24, 2016). The City further argued that the property was not eligible to be redeemed because it had been vacant for ninety days prior to the sale and the sheriff's deed had already been acknowledged. (*Id.*)

Section 32 of the MTCLA "provides that a petition to redeem premises cannot be filed for vacant property once the sheriff's deed has been acknowledged." *City of Philadelphia v. F.A. Realty Inv'rs Corp.*, 95 A.3d 377, 388 (Pa. Cmwlth. Ct. 2014); *see also* 53 PA. STAT. AND CONS. STAT. ANN. § 7293(c). In Ituah's case, the sheriff's deed was acknowledged on October 21, 2015. *See* Answer in Opp'n at 4 (Oct. 13, 2015); Reply to Mot. to Redeem at 4 (Feb. 24, 2016); Answer in Opp'n to Mot. for Post-Trial Relief at 3 (Apr. 11, 2016). Ituah did not file his petition to redeem until December 2. Judge Carpenter denied the motion on March 28, 2016 after a hearing, holding that Ituah had no right of redemption because the property was vacant for ninety days before the sale and the sheriff's deed was acknowledged before he filed his petition. *See* Order, *City of Philadelphia v. Ituah*, No. 1504T0504 (March 28, 2016).

On April 1, 2016, Ituah filed a motion for post-trial relief, contending that Defendants intentionally failed to notify him of the sale and then deliberately processed

the transfer of the deed "expeditiously" and "without due process" in order to prevent him from redeeming the premises. *See* Mot. for Post-Trial Relief at ¶¶ 1, 3, *City of Philadelphia v. Ituah*, No. 1504T0504 (Apr. 1, 2016). Judge Carpenter denied the motion on April 19. On April 22, Ituah appealed to the Pennsylvania Superior Court the Judge's March 28 decision that he had no right to redeem the property. The Superior Court dismissed the appeal on September 13, 2016. On September 1, 2016, Ituah filed an Application for Leave to File a Petition for Allowance of Appeal *Nunc Pro Tunc* with the Pennsylvania Supreme Court. It was denied on December 29, 2016. *See City of Philadelphia v. Ituah*, No. 182-EM-2016, 2016 Pa. LEXIS 2968 (Pa. Dec. 29, 2016).

## B.

Now a New York resident, Ituah filed this suit *pro se* on November 7, 2016 against the City, the Sheriff's Department, Sheriff Jewell Williams, City Attorney Cynthia Stavrakis, Dimopoulos and Cool Spaces LLC. (ECF No. 1.) Construing his *pro se* pleadings generously, *see Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), the Court understands Ituah to be attempting to assert state law claims for abuse of process and fraudulent misrepresentation. *See* (ECF No. 15, at 1; ECF No. 16, at 1–2). In his Complaint, Ituah reasserts the same arguments he made unsuccessfully in state court. He contends that his property was sold "without proper notice from the City of Philadelphia and Sheriff's Department to Dimitros Dimopoulos for $34,500." (Compl., at 3.) He argues that Williams "concealed the information [Ituah] needed to know in order to prevent the sale of the property" and filed a "false and malicious" affidavit of service despite the fact that he "never notified [Ituah] that the sale of [his] property was

set for September 16, 2015." (ECF No. 15, at 4–5.) He then claims that after the property was sold, Williams "agreed to transfer the deed quickly" from Dimopoulos to Cool Spaces without legally processing or paying for the transfer as required by the City so as to "prevent [Ituah] from redeeming the property." (*Id.*); *see also* (Compl., at 3). He contends Williams "concealed the information and filed [a] fraudulent affidavit to deceive the judge to enter judgment" in Dimopoulos's favor. (*Id.*) Finally, Ituah claims that Stavrakis organized the sale, masterminded the formation of Cool Spaces and the quick deed transfer and filed responses opposing his petitions to set aside the sheriff's sale and redeem the property. (*Id.*)

In other words, Ituah's suit concerns "the role of the Defendants [in contributing] to the unfair decision entered in state court." (ECF No. 15, at 1.) Defendants allegedly intentionally "failed to notify [him] about the judgment to sell the property" and "agreed to transfer the deed quickly to prevent [him] from redeeming the property" in order to deprive him of his property rights without due process and fair notice. (*Id.* at 5.) He claims that the resulting loss of his property has caused him serious financial and psychological pain and forced him to file Chapter 13 Bankruptcy.[3] (Compl., at 4.) Ituah seeks the return of his property, records reflecting all of his payments to the City and $100,000 in compensatory damages for the psychological pain and financial problems he has suffered as a result of Defendants' alleged abuse of process and fraudulent misrepresentation. (*Id.*)

---

[3]     Ituah filed for bankruptcy on June 28, 2016. *See In Re: Abraham I. Ituah*, No. 16-BK-14559.

## II.

### A.

The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising subject-matter jurisdiction in a narrow range of cases already heard in state court. *See Exxon Mobil v. Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under the doctrine, a losing state-court party is "barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on [a] claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06 (1994). "[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (internal citations, quotations, and alterations omitted).

*Rooker-Feldman* is not implicated every time a federal plaintiff seeks to litigate a matter already determined by a state court: if a federal plaintiff brings "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," the doctrine does not apply. *Great W. Mining*, 615 F.3d at 166 (quoting *Exxon Mobil*, 544 U.S. at 293). The Third Circuit Court of Appeals recently emphasized the narrowness of the doctrine, distinguishing between injuries caused by the state-court judgment and those brought about by the defendants' actions. *See Gray v. Martinez*, 465 F. App'x 86, 88 (3d Cir. 2012) (citing

*Great W. Mining*, 615 F.3d at 167–68). In so doing, the Third Circuit "recognized that caution is now appropriate in relying on [the prior] formulation of the *Rooker-Feldman* doctrine, which focused on whether the state and federal suits were 'inextricably intertwined.'" *Id.* (citing *Great W. Mining*, 615 F.3d at 169 (internal quotations and citations omitted)); *see also Conklin v. Anthou*, 495 F. App'x 257, 262 (3d Cir. 2012) ("[Plaintiff] is not prevented from otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state-court judgments into question."). In the event that the *Rooker-Feldman* doctrine applies, the Court lacks subject matter jurisdiction. *Great W. Mining*, 615 F.3d at 164.

## B.

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint. FED. R. CIV. P. 12(b)(1). Generally, Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint" and requires the Court to consider the allegations of the complaint as true. *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Here, Defendants make a facial attack on jurisdiction, *see* (Defs.' Mot., at 8–10,

ECF No. 6; Defs.' Mot., at 9–12, ECF No. 12), and the Court accordingly accepts as true the allegations in the Complaint. "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

## C.

"A federal court looks to the law of the adjudicating state to determine its preclusive effect." *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002). "Pennsylvania law regarding claim preclusion essentially mirrors the federal doctrine." *Laychock v. Wells Fargo Home Mortgage*, 399 F. App'x 716, 718–19 (3d Cir. 2010). "*Res judicata,* or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." *Id.* (quoting *Balent v. City of Wilkes–Barre,* 669 A.2d 309, 313 (Pa. 1995)). "The doctrine applies not only to claims that are actually litigated, but also to those that could have been litigated in the first proceeding, so long as they were part of the same cause of action." *Id.* (quoting *Balent*, 669 A.2d at 313); *see also Riverside Memorial Mausoleum, Inc. v. UMET Trust,* 581 F.2d 62, 66–67 (3d Cir. 1978) (*Res judicata* also bars consideration in a second suit of previously raised defenses, as well as defenses that the party "might have, but did not raise" in a prior matter.).

Though the Third Circuit Court of Appeals has not defined "cause of action" for purposes of claim preclusion, it has stated that it takes "a broad view of what constitutes the same cause of action and that *res judicata* generally is thought to turn

on the essential similarity of the underlying events giving rise to the various legal claims." *Davis*, 824 F.3d at 342 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)). "In short, the focus is on facts rather than legal theories." *Id.* (citing *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 173 (3d Cir. 2009)).

## D.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). However, a court need not accept as true inferences drawn by the plaintiff that are unsupported by facts. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555 (2007) (citations and alterations omitted); *see Iqbal*, 556 U.S. at 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a

complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted).

## III.

Ituah purports to bring state law claims for abuse of process and fraudulent misrepresentation. Under Pennsylvania law, an abuse of process occurs where "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993); *see also Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003). For a cause of action to lie, there must have been a "perversion" of legal process. *Gen. Refractories*, 337 F.3d at 304. "'[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.'" *Rosen*, 627 A.2d at 192 (quoting Restatement (Second) of Torts § 682 cmt. b (1977)). Put differently, "[a] cause of action for abuse of process requires some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process; there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984).

To establish a claim for fraudulent misrepresentation under Pennsylvania law, a plaintiff must prove: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable

reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (quoting *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 448 (Pa. 1992)).

Though somewhat ambiguous, Ituah's Complaint can be read as attempting to state such claims pursuant to three different legal theories, one of which would render them barred by *Rooker-Feldman* and all of which would render them barred by *res judicata*. The Court addresses each in turn.

## A.

Ituah's Complaint can be read as alleging that Defendants utilized the state-court foreclosure proceedings to deprive him of his property without giving him adequate notice. (*Id.* at 5.) While foreclosing upon property in order to collect a debt owed would be a proper purpose in the state-court proceedings, *see Schwartz v. OneWest Bank, FSB*, 614 F. App'x 80, 83–84 (3d Cir. 2015), attempting to do so without giving Ituah adequate notice of the same would not. Ituah has therefore sufficiently alleged an improper purpose.

In order to prevail, however, Ituah would need to show not only that the Defendants intended to use the system improperly, but also that they succeeded in doing so. *See Shaffer*, 473 A.2d at 1019 (To constitute abuse of process, "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."). And to conclude that Defendants abused the legal process and harmed Ituah in this way, the Court would have to hold that they succeeded in

depriving him of proper notice. This would likely violate the *Rooker-Feldman* doctrine, applicable where (1) a plaintiff who lost in state court (2) complains of injuries caused by a state-court judgment (3) that was rendered before the federal suit was filed and (4) invites the district court to review and reject the state judgment. *See Great W. Mining,* 615 F.3d at 166. The second and fourth factors are "the key to determining whether a federal suit presents an independent, non-barred claim." *Id.*

The first and third factors are satisfied here. The "critical task" in evaluating the second factor is to "identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Great Western*, 615 F.3d at 167 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 87 (2nd Cir. 2005)). The Third Circuit Court of Appeals has stated that the timing of the injury can be a "useful guidepost" in determining its source, "that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.* (quoting *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007)). Of course, this inquiry "becomes more complicated when a federal plaintiff complains of an injury that is in some fashion related to a state-court proceeding." *Id.*

Here, the injuries of which Ituah complains are the loss of his property and the resulting psychological and financial harm. On one hand, these injuries did not predate the state-court judgment and could be framed as injuries that were produced by the state-court judgment. On the other hand, however, these injuries could be framed as the result of the actions Defendants allegedly took to obtain the state-court judgment

that the judgment merely left unpunished. *See Johnson v. Draeger Safety Diagnostics, Inc.,* 594 F. App'x 760, 764 (3d Cir. 2014) ("[W]hen the source . . . is the defendant's actions (and not the state-court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court."). Although the latter is permissible, and arguably applicable to Ituah's other legal theories, such a characterization fails with respect to this claim. The abuse of process as it is alleged— that Defendants utilized the state-court foreclosure proceedings to deprive Ituah of his property without giving him adequate notice—could not have occurred absent the state-court judgment declaring Defendants' notice adequate and permitting the foreclosure to proceed and stand; thus, the claim impermissibly complains of injury "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Great Western*, 615 F.3d at 167.

The fourth factor also clearly implicates *Rooker-Feldman*. The state court's actions—ordering the sheriff's sale, denying Ituah's motion to set it aside, denying Ituah's motion for reconsideration and denying his motion for post-trial relief—were all based on the state court's conclusion that the Defendants complied with the requisite notice requirements. Holding that the Defendants committed an abuse of process by foreclosing on the property without providing adequate notice would be the equivalent of reviewing and rejecting the state-court judgment that Defendants provided adequate notice. *See In re Porovne*, 436 B.R. 791, 797–800 (Bankr. W.D. Pa. 2010) ("In Pennsylvania, once an *in rem* foreclosure judgment is obtained, part of the relief afforded by the judgment is the resulting sheriff's sale of the property. The Debtor's

attack on the notice procedure implicated during the execution process of this judgment is tantamount to an attack on the state court judgment itself.").

Finally, "the nature of the relief requested by the federal plaintiff may be critical in the court's evaluation of the second and fourth requirements." *In re Sabertooth, LLC*, 443 B.R. 671, 681–82 (E.D. Pa. 2011) (citing *In re Randall*, 358 B.R. 145, 155–56 (E.D. Pa. 2006)). In addition to compensatory damages, Ituah requests that the Court set aside the sheriff's sale and return his property to him. This would directly negate the state-court proceedings. *See also In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (a lower federal court may not review a state court's foreclosure decision and prohibit the victorious party from enforcing its judgment).

In sum, Ituah's claim is barred by *Rooker-Feldman* because "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *In re Madera*, 586 F.3d at 232; *see also Great W. Mining*, 615 F.3d at 170 n.4 (citing *In Re Madera* approvingly). Even if the Court were to find that *Rooker-Feldman* did not bar Ituah's claim, the claim would nevertheless be precluded by *res judicata* because Ituah raised and litigated this argument on several occasions in the state-court proceedings. *See Balent*, 669 A.2d at 313.

## B.

Ituah's Complaint can also be read as alleging that Defendants abused the process or made a fraudulent misrepresentation by filing a misleading affidavit of service certifying to the court that they had attempted to give Ituah notice when, in reality, they had not informed Ituah about the sheriff's sale and were actively trying to

prevent him from receiving notice. Such a claim may not be barred by *Rooker-Feldman* since it would not concern the merits of the state-court judgments, but rather "independent torts committed to obtain them." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014); *see also Monclova v. US Bank NA*, No. 16-3677, 2017 WL 118015, at *2 (3d Cir. Jan. 12, 2017) ("[Plaintiff's] complaint can also be read to contain claims concerning harm caused by the defendants, not the state-court judgment, which would not be barred by *Rooker-Feldman*."); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 614 (E.D. Pa. 2014), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (holding that even injuries that are related to the state-court proceeding in some fashion or helped to cause the adverse state judgment, such as a fraud on the court or a claimed conspiracy with the judges, may be independent of those judgments because they do not necessarily compel the conclusion that the state court erred in its decisions).

Ituah's allegations regarding Defendants' alleged abuse of process and fraudulent misrepresentation are sufficiently independent from the state-court judgment to survive *Rooker-Feldman*. *See Gray*, 465 F. App'x at 89 ("Were the financial defendants to have engaged in fraud, collusion, or other malfeasance in securing foreclosure, *Rooker-Feldman* would not prevent the exercise of jurisdiction simply because relief would cast doubt on the state-court judgment."); *Mikhail*, 991 F. Supp. 2d at 620 ("Of course, any harms caused by [the defendant] and her attorneys, such as fraud upon the court or malicious prosecution, for example, are not barred by *Rooker–Feldman* because they are not caused by any state court judgment."); *cf. Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 51 (3d Cir. 2013).

This claim, however, is barred by *res judicata*.  Even after the delivery of the sheriff's deed, a sheriff's sale may be set aside based on fraud or lack of authority to make the sale.  *Mortgage Elec. Registration Sys., Inc. v. Ralich*, 982 A.2d 77, 80 (Pa. Super. Ct. 2009).  In fact, Ituah raised this argument on at least two occasions in the state-court proceedings.  In arguing for the sale to be set aside, he claimed that the Defendants "fraudulently obtained the judgment in [his] absence by failing to properly [notify him] of the action that led to the sale."  *See* Reply at 1, *City of Philadelphia v. Ituah*, No. 1504T0504 (Oct. 22, 2015).  He later argued that he should be permitted to redeem the property because "[t]he City deliberately failed to locate [his] address" in the taxpayer information system so as to fraudulently prevent him from finding out about the sale of his property.  *See* Mot. to Redeem at 1–2, *City of Philadelphia v. Ituah*, No. 1504T0504 (Dec. 2, 2015).  The court denied these motions.  Because Ituah litigated this issue in state court, *res judicata* bars him from re-litigating it now.  *See Balent*, 669 A.2d at 313 (a valid, final judgment on the merits precludes future litigation between the parties or their privies on the same cause of action, including claims that could have been litigated during the first proceeding).

## C.

Finally, Ituah contends that Defendants committed an abuse of process by agreeing to transfer the deed quickly and illegally from Dimopoulos to Cool Spaces, his corporate designee, so as to prevent Ituah from redeeming the property.  He claims Defendants then concealed this information and deceived the judge into entering judgment in Dimopoulos's favor.  Effectuating a procedurally improper transfer of the deed in order to deprive Ituah of his right to redeem his property could constitute an

improper purpose for an abuse of process claim. Likewise, fraudulently concealing or misrepresenting such actions to the Court could theoretically constitute a fraudulent misrepresentation. Moreover, because Ituah's claim implicates the actions Defendants allegedly took to secure the state-court judgment rather than the accuracy of the judgment itself, it would not be barred by *Rooker-Feldman*. *See, e.g.*, *Gray*, 465 F. App'x at 89.

However, this claim is also barred by *res judicata*. After the state court denied his motion for reconsideration and his motion to redeem, Ituah filed a motion for post-trial relief. He argued that because his motion to set aside the sale "notified the city and the third party purchaser of [his] intention to redeem the premises," Williams "should have informed the third party purchaser that the property was subject to redemption as permitted by state law." *See* Mot. for Post-Trial Relief at ¶ 7, *City of Philadelphia v. Ituah*, No. 1504T0504 (Apr. 1, 2016). He claimed that, instead, the Defendants had "alleg[ed] that the property was vacant" and "expeditiously processed the transfer of deed without due process" in order to wrongfully "prevent [him] from redeeming the premises." *See id.* at ¶¶ 1, 3. He asked the state court to approve his petition to redeem on account of this alleged misconduct. The state court denied the motion. Because he has already sought relief on this basis in state court, *res judicata* bars him from doing so again.

## IV.

Even if Ituah's claims were not barred by *Rooker-Feldman* and *res judicata*, they would be dismissed pursuant to Rule 12(b)(6). As an initial matter, because the Sheriff's Department does not have an independent corporate existence from the City, it

would be dismissed from the suit and all claims against it would have to be brought against the City.  *See Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 377 (E.D. Pa. 1995), *aff'd*, 91 F.3d 125 (3d Cir. 1996).

Furthermore, the City, as a municipal entity with governmental immunity, cannot be sued for intentional torts premised on the willful misconduct of its employees. *See Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. Ct. 2014) (collecting cases).  Ituah would therefore be barred from bringing claims of abuse of process and fraudulent misrepresentation against the City.  *See id.*

Ituah's allegations are also insufficient to state claims against the remaining Defendants.  Ituah has failed to identify a fraudulent misrepresentation made by Defendants and falls far short of meeting the particularity with which Rule 9(b) requires misrepresentations to be alleged.  *See State Farm Mut. Auto. Ins. Co. v. Ficchi*, No. 10-555, 2011 WL 2313203, at *7 (E.D. Pa. June 13, 2011) (collecting cases). Likewise, with respect to his purported abuse of process claim, he has not identified a "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process" committed by Defendants.  *Shaffer*, 473 A.2d at 1019.  Ituah proffers no argument as to how the transfer of the deed was procedurally improper, beyond the one that was already rejected by the state court.  And nothing in the Act suggests that the Defendants were not allowed to effectuate the transfer of the deed or were required to delay doing so until it became apparent that Ituah did not wish to exercise his right to redeem.  In fact, Williams may not have been able to delay the transfer even if he had wanted to—in Pennsylvania, the "purchaser at the sheriff's sale obtains equitable ownership of the property and upon settling with the Sheriff, the

right to compel delivery of the deed." *In re Townsville*, 268 B.R. 95, 118 (Bankr. E.D. Pa. 2001) (quotation omitted).

Moreover, the deed transfer did not violate Ituah's procedural rights. Under Pennsylvania law, "if [Ituah] wished to redeem this vacant property, [he] was required to do so before the sheriff's deed was acknowledged." *Brentwood Borough Sch. Dist. v. HSBC Bank USA*, 111 A.3d 807, 809 (Pa. Cmwlth. Ct. 2015), *appeal granted sub nom. Brentwood Borough Sch. Dist. v. Held*, 123 A.3d 776 (Pa. 2015), *and aff'd sub nom. Brentwood Borough Sch. Dist. v. Held*, 139 A.3d 187 (Pa. 2016). While Defendants' actions may have shortened the time that Ituah had to exercise his right, they were not unauthorized, fraudulent or inconsistent with the legitimate objectives of the state foreclosure scheme. *See id.* at 813 ("It is clear from the very limited period within which an owner may redeem a 'vacant property' that the Legislature did not intend a lengthy redemption period. On the contrary, the Act was specifically enacted to facilitate sales of those properties which are abandoned, vacated, uninhabitable and uninhabited, and which contribute to blight or the risk of property crime, such as arson, theft, and vandalism, while, at the same time, providing to an owner that presently resides on a property sold for its taxes, nine months within which to raise the money needed to avoid displacement.").

Thus, even accepting as true Ituah's allegations that Defendants agreed to effectuate an expeditious transfer of the deed knowing that it would cut off Ituah's right of redemption under the Act and intending the same, he nevertheless fails to state a claim for abuse of process because "there is no liability where the defendant has done

nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.*

Ituah's claims must therefore be dismissed because to the extent he seeks redress for injuries caused by the state-court judgments, they are barred by *Rooker-Feldman*, and to the extent he seeks relief for injuries independent of, albeit related to, the state-court proceedings, they are both barred by *res judicata* and insufficient under Rule 12(b)(6).

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.